# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CHERYL RANDOLPH, Derivatively on Behalf of SPRINT NEXTEL CORP.,<br><br>Plaintiff,<br><br>vs.<br><br>GARY D. FORSEE, et al.,<br><br>Defendants,<br><br>SPRINT NEXTEL CORP.,<br><br>Nominal Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **Case No. 10-2445-JAR-JPO** |

## MEMORANDUM AND ORDER
## GRANTING MOTION TO REMAND

This matter comes before the Court on plaintiff Cheryl Randolph's Motion to Remand Action and for Fees and Costs (Doc. 28). Plaintiff originally filed this action in the District Court of Johnson County, Kansas on July 14, 2010, against defendants Gary D. Forsee, Paul N. Saleh, James H. Hance, Gordon M. Bethune, V. Janet Hill, Robert R. Bennett, Jr., Larry C. Glasscock, Rodney O'Neal, Linda K. Lorimer, Irvine O. Hockaday, Jr., William H. Swanson, Keith J. Bane, William E. Kennard, Frank M. Drendel, Barry J. West, William G. Arendt, Mark E. Angelino, and Timothy E. Kelly (collectively, the "Individual Defendants"), as well as nominal defendant Sprint Nextel Corporation ("Sprint"). Defendants Sprint, Kelly, West, Angelino, Forsee, Arendt, and Saleh filed a Notice of Removal on August 11, 2010. The remaining defendants consented to removal.

The lawsuit arises out of Sprint's acquisition of Nextel Communications in August 2005.

This state law shareholder derivative action is brought against certain members of Sprint's Board of Directors (the "Board") and certain of its executive officers and directors for breaches of fiduciary duty, waste of corporate assets, and unjust enrichment. No federal claims are asserted in the Petition. On the same day that defendants removed this action, they filed a Motion to Consolidate (Doc. 6) with *Arthur I. Murphy, Jr., et al. v. Gary D. Forsee, et al.*, No. 09-2242-EFM ("the Murphy action"). The Murphy action is a removed derivative action that has been stayed pending a decision on the motion to dismiss for failure to state a claim in a related case before Judge Melgren, *Cora E. Bennett v. Sprint Nextel Corp., et. al.*, 09-2122-EFM ("the Bennett action"), a shareholder class action lawsuit alleging federal securities laws violations.[1] The Court previously granted plaintiff's motion to prioritize a decision on the instant motion to remand over the motion to consolidate. The motion to remand is now fully briefed and the Court is prepared to rule. For the reasons stated below, the Court grants plaintiff's motion to remand and denies her motion for fees and costs.

I.      **Standard**

Only state court actions that could have originally been filed in federal court are removable.[2] The court is required to remand "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction."[3] As the party invoking the federal court's jurisdiction, defendants carry the burden of demonstrating that the requirements for exercising

---

[1]The Bennett and Murphy actions are not consolidated.

[2]28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

[3]*Id.* § 1447(c).

jurisdiction are present.[4]  Because federal courts are courts of limited jurisdiction, the law

imposes a presumption against federal jurisdiction,[5] and requires a court to deny its jurisdiction

in all cases where such jurisdiction does not affirmatively appear in the record.[6]  "Doubtful cases

must be resolved in favor of remand."[7]

There are two statutory bases for federal subject matter jurisdiction.  First, under 28

U.S.C. § 1332,  federal district courts have original jurisdiction of civil actions where complete

diversity of citizenship and an amount in excess of $75,000 (exclusive of interest and costs) in

controversy exist.  Second, under 28 U.S.C. § 1331, federal district courts "have original

jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United

States," or federal question jurisdiction.  In addition, if the Court has federal question or

diversity jurisdiction of some claims, it may exercise supplemental jurisdiction over state law

claims.[8]

Defendants concede that plaintiff alleges only state law claims in the Petition and that the

parties are not diverse, but nonetheless removed this action on the basis of federal question

jurisdiction under the substantial federal question doctrine.  In order to determine whether a

---

[4]*See Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001) (citation omitted), *aff'd*, 126 S. Ct. 704 (2005).

[5]*Frederick & Warinner v. Lundgren*, 962 F. Supp. 1580, 1582 (D. Kan. 1997) (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)).

[6]*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

[7]*Thurkill v. The Menninger Clinic, Inc.*, 72 F. Supp. 2d 1232, 1234 (D. Kan. 1999) (citing *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995), *cert. denied*, 516 U.S. 863 (1995) (further citations omitted)).

[8]28 U.S.C. § 1367.

claim "arises under" federal law, the Court refers to the "well-pleaded complaint rule."[9]  That

rule provides that "federal jurisdiction exists only when a federal question is presented on the

face of the plaintiff's properly pleaded complaint.  The rule makes the plaintiff the master of the

claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."[10]  The Court

is equally mindful of the "artful pleading doctrine," which disallows a plaintiff from defeating

removal by failing to plead federal questions even though they are essential elements of the

plaintiff's claim.[11]

Under the well-pleaded complaint rule, if "'a well-pleaded complaint establishes either

that federal law creates the cause of action or that the plaintiff's right to relief necessarily

depends on resolution of a substantial question of federal law,'" then it "arises" under federal

law within the meaning of 28 U.S.C. § 1331.[12]

> The doctrine captures the commonsense notion that a federal court
> ought to be able to hear claims recognized under state law that
> nonetheless turn on substantial questions of federal law, and thus
> justify resort to the experience, solicitude, and hope of uniformity
> that a federal forum offers on federal issues.[13]

The United States Supreme Court has characterized this basis for jurisdiction as a "special and

small category."[14]  "[T]he question is, does a state-law claim necessarily raise a stated federal

---

[9]*See Turgeau v. Admin. Rev. Bd.*, 446 F.3d 1052, 1060 (10th Cir. 2006).

[10]*Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citation omitted).

[11]*Turgeau*, 446 F.3d at 1060 (citing *Caterpillar*, 482 U.S. at 392).

[12]*Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27–28 (1983)).

[13]*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (citation omitted).

[14]*McVeigh*, 547 U.S. at 699.

issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."[15]

## II.     The Petition

The following facts are alleged in the Petition.  Sprint is a global communications company that offers a range of wireless and wireline communications products and services.  In 2005, Sprint paid top dollar for Nextel Communication ("Nextel") on the basis that merger synergies would amount to much more than the purchase amount.  After the merger, however, Sprint suffered numerous technical, financial, and operational issues.  To conceal Sprint's post-merger problems, the Individual Defendants issued numerous improper statements in Securities and Exchange Commission ("SEC") filings and press releases assuring shareholders that Sprint was poised for a turnaround and was focused on improving its core operations.  The Individual Defendants similarly made multiple, repeated misleading statements touting Sprint's tightened credit standards, decreasing reliance on subprime subscribers, improved wireless subscriber metrics, and the successful integration of Sprint and Nextel and the Company's goodwill assets associated with Nextel.  The Board permitted Sprint to expend over $1.9 billion to repurchase its own stock, despite its inflated price.  Meanwhile, certain defendants took advantage of Sprint's inflated stock prices to sell off their personal Sprint holdings to reap proceeds of over $14 million.  Around the time Sprint's post-merger troubles were coming to light, on October 8, 2007, defendant Forsee "stepped down" from his position at Sprint's helm, allowing him to receive over $13.5 million in severance benefits.  The Petition acknowledges that Sprint "has been sued in a federal securities fraud class action which arose out of

---

[15] *Grable & Sons*, 545 U.S. at 313.

defendants' misstatements."

Paragraphs 50 through 67 allege a number of specific misstatements made by defendants between October 26, 2006 and August 16, 2007 that form the basis for plaintiff's claims. These alleged misstatements took place within quarterly financial reports, press releases, representations made on an earnings calls, a Form 10-Q, conference calls, year-end earnings results, and a Form 10-K. Plaintiff alleges that these misstatements were improper because: (1) defendants had not in fact tightened credit, nor implemented more restrictive credit policies during the fourth quarter of 2006; (2) Sprint had not in fact delivered its systems consolidation or network integration goals; and (3) the Individual Defendants failed to comply with Generally Accepted Accounting Principles and appropriately value the goodwill associated with the merger.

Plaintiff's first state law cause of action asserts on behalf of Sprint that the Individual Defendants, as officers and directors of Sprint, breached their fiduciary duties owed to Sprint. The Petition alleges that defendants Forsee and Saleh breached their fiduciary duties of care and loyalty by making repeated misleading statements in press releases and on earnings calls regarding Sprint's credit policies, the health of the iDEN network, the growth in CDMA, and the synergies achieved from the merger of Nextel.

The Petition alleges that defendants Forsee, Hance, Hill, Bethune, Bennett, Glasscock, O'Neal, Lorimer, Hockaday, Swanson, Bane, Kennard and Drendel (the "Director Defendants") violated and breached their fiduciary duty of loyalty by knowingly or recklessly making improper financial statements—SEC Forms 10-Q and 10-K and Sprint's 2006, 2007, and 2008 earnings press releases—that did not properly describe Sprint's credit policies or account for the

valuation of Sprint's goodwill and other intangible assets. The Petition alleges that the Director Defendants further breached their fiduciary duty of loyalty by permitting Sprint to improperly repurchase its stock when the directors knew that Sprint's stock price was artificially inflated by the misleading statements.

The Petition alleges that defendants Hance, Bennett, Glasscock, Lorimer, and Bane also breached their fiduciary duty of loyalty by failing to fulfill their duties as members of Sprint's audit committee as specified in the committee's charter, including the duty to review and discuss Sprint's quarterly and annual financial results and earnings press releases. Plaintiff alleges that these defendants also breached their duty of loyalty by knowingly or recklessly reviewing and approving improper financial statements that did not properly represent Sprint's operations and goodwill. The Petition alleges that defendants West, Arendt, Angelino, and Kelly breached their fiduciary duty of loyalty by selling Sprint stock based on proprietary non-public information concerning Sprint's financial condition and future business prospects.

Plaintiff's second cause of action alleges on behalf of Sprint that the Individual Defendants wasted corporate assets. Specifically, Plaintiff alleges that defendants Hance, Bethune, Hill, Bennett, Glasscock, O'Neal, Lorimer, Hockaday, Swanson, Bane and Drendel are liable to Sprint for allowing defendant Forsee to terminate his employment "without cause" despite his multiple breaches of fiduciary duty to Sprint, thus enabling Forsee to receive $13,560,595 in severance benefits after leaving Sprint. Plaintiff alleges that the Director Defendants permitted the improper repurchase of $1,952,365,769.50 worth of Sprint's stock at a time when they knew or were reckless in not knowing that Sprint's stock price was artificially inflated by the misleading statements.

Plaintiff also alleges that defendants Forsee, Hance, Bethune, Hill, Bennett, Glasscock, O'Neal, Lorimer, Hockaday, Swanson, Bane, Kennard and Drendel wasted corporate assets by: (1) paying undeserved bonuses to certain of its executive officers who breached their fiduciary duties to the Company and (2) paying undeserved compensation to certain of its directors who breached their fiduciary duties.  As an additional basis for her derivative waste claim, plaintiff alleges that the Individual Defendants incurred potentially hundreds of millions of dollars of legal liability and/or legal costs to defend defendants' unlawful actions.

Finally, Plaintiff alleges as part of her third cause of action that the Individual Defendants were unjustly enriched to Sprint's detriment in connection with undeserved compensation and bonuses that Sprint paid to the Individual Defendants who breached their fiduciary duties.

Plaintiff's alleged damages include the substantial costs associated with the shareholder class action lawsuit alleging federal securities laws violations.

## III. Discussion

### A.    *Defendants' Alleged Misstatements*

Defendants argue that the state law causes of action are based on false and misleading statements and/or omissions on financial reports that violated federal securities laws.  They argue that these claims require the Court to resolve whether Sprint's officers and directors knowingly filed with the SEC reports containing material misstatements and omissions that violate federal securities laws.  "At least some of the purportedly false and misleading disclosures were signed by some of the Individual Defendants and filed with the SEC."[16]  Defendants also point to the allegations regarding the audit committee members, which charge that they were required to

---

[16](Doc. 34 at 9.)

review and discuss the annual audited financial statements and quarterly financial statements that were to be included in the Form 10-Q and Form 10-K, required SEC filings. Defendants rely further on the fact that plaintiff seeks to recover for losses associated with the federal securities class action lawsuit.[17] Defendants also emphasize the interrelatedness of the factual averments in this case and the Bennett Action as evidence that this case raises issues of federal law.

Plaintiff counters that she does not seek any relief in this case under federal securities laws and that none of the state law claims allege violations of federal securities laws as an essential element. Plaintiff characterizes her references to federal securities laws as "passing," and argues that the shared factual basis between this suit and the Bennett Action is irrelevant to the jurisdictional question.

As an initial matter, the Court agrees that the claims asserted in the Bennett Action do not inform this Court's jurisdictional analysis here. While the facts and some of the parties may be the same, it is undisputed that the causes of action are not the same. This action is brought on behalf of the corporation in plaintiff's capacity as a shareholder for state law violations, whereas the Bennett action is brought on behalf of the shareholders themselves for violation of federal securities laws. The Court has previously ruled that remand should be decided before consolidation because it is jurisdictional. Defendants' arguments concerning the similarity of the two suits goes to whether consolidation is appropriate—an issue not before the Court at this time. This Court will proceed to determine whether it has an independent basis for subject matter jurisdiction in this case, without regard for the claims alleged in the Bennett and Murphy actions.

---

[17]Defendants arguments with regard to these damages pertain to their contribution argument, which the Court addresses in Part III.C, *infra*.

The Tenth Circuit has explained that the first step in the Court's analysis under *Grable & Sons Metal Products., Inc. v. Darue Engineering & Manufacturing*,[18] is to "determine whether the well-pleaded complaint raises a disputed issue of federal law, the resolution of which is necessary to grant the relief Plaintiff[] seek[s]."[19]  Therefore, in order for there to be a disputed federal issue, the Court must be required to resolve the federal issue in order for plaintiff to recover.  Plaintiff's claims must depend upon whether defendants violated federal securities laws.  Defendants fall short of making this showing.

The fact that a plaintiff could seek a remedy provided for by federal securities law based on the factual allegations in the Petition does not dictate the jurisdictional question.  "As masters of their claims, plaintiffs may elect to ignore any federal claims which could potentially be filed."[20]  Defendants point the Court to no authority for the proposition that plaintiff must assert her state law claims in the same lawsuit in the same jurisdiction as the federal class action.  The fact that plaintiff could have brought the two cases together, or that the facts in this case could give rise to federal claims, is not an appropriate basis for removal.[21]

In order to prevail on her claims, plaintiff must show that defendants breached a fiduciary duty to Sprint.  Defendants assert in their opposition to remand that plaintiff's state law claims are "entirely premised on violations of the federal securities laws," yet defendants concede elsewhere in their brief that not all of plaintiff's claims are based on SEC filings.  In fact, the list

---

[18]545 U.S. 308 (2005).

[19]*Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1234 (10th Cir. 2006).

[20]*Envtl. Remediation Holding Corp. v. Talisman Capital Opportunity Fund, L.P.*, 106 F. Supp. 2d 1088, 1096 (D. Colo. 2000).

[21]*Flynn v. McDaniel*, 689 F. Supp. 2d 686, 691 (S.D.N.Y. 2010); *Landers v. Morgan Asset Mgmt., Inc.*, No. 08-2260, 2009 WL 962689, at *3 (W.D. Tenn. Mar. 31, 2009); *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 23 (Del. Ch. 2009).

of alleged misstatements in the Petition includes statements made on conference calls and earnings calls, outside of the financial disclosures required by SEC rules and regulations. The fact that a plaintiff identifies federal securities law violations, among a number of other factual events that give rise to state law claims is an important factor for many courts[22] in determining whether an issue of federal law is actually in dispute.[23] Here, if plaintiff removed the references to SEC-required filings, the Court would be left with other theories of her state law claims that do not reference federal law.[24]

On the breach of fiduciary duty claim, plaintiff refers to misleading statements made not only on SEC required filings, but also on conference calls and earnings calls. Plaintiff refers to the audit committee members' duties defined in the Audit Committee Charter in effect from 2006 through 2008. Furthermore, the insider trading allegations do not necessarily require the

---

[22]The parties spend the majority of their briefs discussing numerous cases outside of this jurisdiction, most of which are unpublished, in support of their competing positions. None of the district court cases cited by the parties are binding on this Court. Indeed, they all turn on case-specific inquiries into the allegations made in the complaints before each court. This Court will endeavor to evaluate the allegations made in <u>this</u> Petition. To the extent there are similarities or differences that make an unpublished case outside of this jurisdiction persuasive, the Court will look to it for guidance.

[23]*See Envtl. Remediation Holding Corp.*, 106 F. Supp. 2d at 1096 ("The allegation of securities fraud is merely one factual event among others, upon which plaintiffs premise their state law claims."); *Joseph v. Commerce Bank, N.A.*, No. 10-0685-CV-W-ODS, 2010 WL 3733557, at *3 (W.D. Mo. Sept. 17, 2010) (finding that plaintiff's claims are not all premised on alleged federal regulatory violations; therefore, they do not appear to necessarily involve a contested federal issue); *In re Reserve Fund Sec. & Derivative Litig.*, Nos. 09 MD.2011(PGG), 09 Civ. 782 (PGG), 09 Civ. 3786 (PGG), 2009 WL 3634085, at *4 (S.D.N.Y. Nov. 3, 2009) (finding alternate grounds on each claim that are not based on federal law); *Landers v. Morgan Asset Mgmt., Inc.*, No. 08-2260, 2009 WL 962689, at 8 (W.D. Tenn. Mar. 31, 2009) ("Plaintiffs concede that their negligence count depends on finding that the Defendants did not meet the standard of care imposed by federal securities law."); *Ekas v. Burris*, Nos. 07-61156-CIV, 07-61157-CIV, 2007 WL 4055630, at *4 (S.D. Fla. Nov. 14, 2007) ("the duty to comply with federal laws was one of many duties that were allegedly breached by Defendants."); *Gargiulo v. Decker*, No. SACV05-00103, 2005 WL 755771, at *3 (C.D. Cal. Mar. 30, 2005) ("Reference to possible violations of federal securities laws is made only by way of demonstrating alternative ways in which Defendants allegedly violated state corporate law and, as such, do not give rise to jurisdiction.").

[24]*See In re Universal Serv. Fund Tele. Billing Practices Litig.*, 247 F. Supp. 2d 1215, 1228 (D. Kan. 2002) (discussing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1998)); *Joseph*, 2010 WL 3733557, at *3 (quoting *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816–17 (4th Cir. 2004)); *see also Envtl. Remediation Holding Corp.*, 106 F. Supp. 2d at 1096–97.

Court to determine that a violation of federal law occurred; plaintiff alleges only that the use of Sprint's proprietary information breached certain fiduciary duties, as defined by Kansas law.

The waste of corporate assets claim is tied to the breach of fiduciary duty claim; plaintiff argues that defendants wrongfully terminated Forsee without cause based on his breaches of fiduciary duty. Plaintiff further alleges that defendants wasted corporate assets by permitting the improper repurchase of company stock despite their actual or constructive knowledge that the price was artificially inflated due to the misleading statements. Finally, plaintiff alleges defendants paid undeserving compensation and bonuses to certain officers and directors based on the alleged misstatements. As already described, it is not apparent from the well-pleaded complaint that plaintiff necessarily must prove a violation of federal securities laws in order to prevail on her claims. Whether the statements, only some of which were made on SEC-required forms, are false or misleading is a question of fact that a factfinder will determine under Kansas law. Likewise, knowledge of the falsity of these statements would be a question of fact determined under Kansas law. The unjust enrichment claim is based on the same factual averments made in the breach of fiduciary duty and waste of corporate assets claims.

*Grable & Sons* required the court to resolve whether a federal agency had violated federal law; specifically, the issue of whether the plaintiff was given notice by the IRS within the meaning of a federal statute, which was deemed an essential element of the plaintiff's quiet title claim.[25] In fact, the Supreme Court observed that it "appeared to be the only legal or factual issue contested in the case."[26] As described above, the violation of federal securities law is by no means the only, or even the primary legal or factual issue in this case, nor do the state law claims

---

[25] 545 U.S. 545 U.S. 308, 314–15 (2005).

[26] *Id.* at 315.

turn on the meaning of federal securities laws or regulations.  Instead, they turn on the duties

owed by defendants to Sprint, an issue defined by Kansas law.[27]

To the extent plaintiff claims that SEC rules and regulations create a duty defendants

owed to plaintiff in this case, it is not sufficient to invoke the substantial federal question

doctrine.  This Court could find that defendants breached their fiduciary duties without

necessarily finding a violation of federal securities law.  Plaintiff alleges that defendants' duties

of good faith, loyalty, and good care arise from the defendants' fiduciary relationship to Sprint, a

relationship defined by Kansas law.[28]  Other courts have declined to find federal jurisdiction

merely because federal law might provide a standard of care for a state law claim.[29]

In *D'Alessio v. New York Stock Exchange, Inc.*,[30] the Second Circuit discussed whether

utilizing federal securities law as a standard of care in a state-created cause of action constitutes

a substantial federal question.  The court found that the plaintiff's state law claims were "rooted

in" federal law violations: "the gravamen of [plaintiff's] state law claims is that the NYSE and

its officers conspired to violate the federal securities laws . . . and failed to perform its statutory

duty, created under federal law, to enforce its members' compliance with those laws."[31]  The

claim required the court to interpret and apply various federal securities laws in determining the

---

[27]*See, e.g.*, *Miller v. Foulston, Siefkin, Powers & Eberhardt*, 790 P.2d 404, 416 (Kan. 1990) ("Kansas imposes a very strict fiduciary duty on officers and directors of a corporation to act in the best interests of the corporation and its stockholders.  This duty requires the officer or director to work for the general interests of the corporation.").

[28]*Id.*; *see also Newton v. Hornblower, Inc.*, 582 P.2d 1136, 1143 (Kan. 1978) (describing duties of officers and directors of a corporation).

[29]*Firefighters' Ret. Sys. v. Regions Bank*, 598 F. Supp. 2d 785, 798–99 (M.D. La. 2008); *In re Reserve Fund Sec. & Derivative Litig.*, Nos. 09 MD.2011(PGG), 09 Civ. 782 (PGG), 09 Civ. 3786 (PGG), 2009 WL 3634085, at *6 (S.D.N.Y. Nov. 3, 2009)

[30]258 F.3d 93 (2d Cir. 2001).

[31]*Id.* at 101.

scope of the defendant's duties.[32]  Unlike *D'Alessio*, the claims in this case do not require a

determination that defendants violated federal law.  Allegations that defendants breached a

fiduciary duty by making misleading statements or omissions on forms required to be submitted

by federal law simply provides the factual basis for the state law claims.  As one district court

has explained:

> The filing of a misleading prospectus may constitute evidence of
> breach, but the breach of fiduciary duty claim itself does not stand
> or fall based on the alleged misrepresentation in the prospectus.  In
> the corporate context, breach of fiduciary duty under state law
> involves a violation of corporate directors' role as "guardians of
> the corporate welfare. . . .  Actions that may accord with statutory
> requirements are still subject to the limitation that such conduct
> may not be for the aggrandizement or undue advantage of the
> fiduciary."  *Alpert v. 28 Williams St. Corp.*, 63 N.Y.2d 557, 483
> N.Y.S.2d 667, 473 N.E.2d 19, 25 (1984) (citations and internal
> quotation marks omitted).  These elements are unrelated to federal
> law.  The filing of a misleading statement in a prospectus may be a
> factual predicate for breach, but it is not an element upon which
> the claim stands or falls.  Any failure to comply with federal
> securities laws "simply provide[s] the factual basis for [Sung's]
> state law claims."  *Schappel v. UICI*, No. 99-CV-1544-G, 1999
> WL 1101262, at *2 (N.D.Tex. Dec. 3, 1999).[33]

Likewise, defendants' failure in this case to comply with federal rules by misrepresenting or

omitting information on federally-required forms would simply provide some evidence of a

breach, but the Court need not construe federal law in order for plaintiff to recover.[34]  Notably,

---

[32]*Id.* at 102.

[33]*Sung ex rel. Lazard Ltd.. v. Wasserstein*, 415 F. Supp. 2d 393, 405 (S.D.N.Y. 2006); *see also Fagin v. Gilmartin*, No. 03-2631, 2007 WL 419286, at *4 (D.N.J. Feb. 1, 2007); *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 22–24 & n.1 (Del. Ch. 2009) (collecting cases).

[34]*Accord Flynn v. McDaniel*, 689 F. Supp. 2d 686, 690–91 (S.D.N.Y. 2010) ("the fact that the allegedly false statements were made in a federally required document does not change the inquiry into whether standing alone, they were false or misleading under state law." (quotation and alterations omitted)); *Firefighters' Ret. Sys.*, 598 F. Supp. 2d at 798–99 (finding allegations "merely provide a factual basis" for the state law claims); *Ekas v. Burris*, Nos. 07-61156-CIV, 07-61157-CIV, 2007 WL 4055630, at *4 (S.D. Fla. Nov. 14, 2007) ("the fact that some of those false statements were made to the SEC and may have violated federal law is tangential to proving the breach

defendants point to no statute or rule that the Court would be required to interpret in order for plaintiff to prevail on her state law claims. Instead, state law will define whether the statements made in federally required documents were false or misleading.

Defendants attempt to distinguish the many cases favoring remand on this issue, and point to cases evaluating similar complaints in support of removal jurisdiction. In addition to *D'Alessio*, discussed above, defendants primarily rely on *In re Goodyear Tire & Rubber Co. Derivative Litigation*,[35] *Gobble v. Hellman*,[36] *Wietschner v. Gilmartin*,[37] and *Landers v. Morgan Asset Management, Inc.*[38] The Court is not persuaded that these cases require remand. *Gobble* and *Goodyear* have recently been described by the Northern District of Ohio as superseded by the Sixth Circuit.[39] *Wietschner* has also been called into question by a different judge in the same district post-*Grable & Sons*:

> [T]his Court respectfully disagrees with the analysis of the *Wietschner* court. At the core of this case, the injuries of which Plaintiffs complain arise from Defendants' alleged breach of duties created and defined by state law. The fact that a court may have to look to federal law to evaluate whether Defendants' alleged misconduct violated their state law obligations does not, in this case, elevate the federal law aspect of the alleged misconduct into

---

of fiduciary duty."); *Fagin*, 2007 WL 419286, at *5 (finding fiduciary duty governed by state law, unjust enrichment claim premised on false reporting to the SEC does not require interpretation of federal law, and plaintiff need not prove that federal securities laws were in fact violated in order to prevail on alleged mismanagement claim).

[35]Case No. 5:03CV2180, slip op. (N.D. Ohio Apr. 7, 2004) (attached to Doc. 34 as Ex. A).

[36]No. 1:02CV0076, 2002 WL 34430286 (N.D. Ohio Mar. 26, 2002).

[37]No. 02-4879 (MLC), 2003 US DIST LEXIS 18997 (D.N.J. Jan. 13, 2003).

[38]No. 08-2260, 2009 WL 962689 (W.D. Tenn. Mar. 31, 2009).

[39]*Elec. Workers Pension Fund Local 103, I.B.E.W. v. Weiss*, No. 09-0875, 2010 WL 597717, at *9 (N.D. Ohio Feb. 17, 2010) (citing *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007)) ("both *Goodyear* and *Gobble* have been superceded on" the point that state causes of action for fraud in connection with the sale of securities that also allege violations of federal law create federal question jurisdiction).

a substantial question of federal law.[40]

This Court finds, like the court in *Fagin*, that the Petition in this case does not necessarily raise a disputed issue of federal law. Instead, the alleged breaches of duties owed by the Individual Defendants to Sprint are questions of state law. To the extent *Wietschner* holds otherwise, the Court is persuaded that *Fagin* is a more sound application of the law as described in *Grable & Sons*, decided subsequent to *Wietschner*, *Gobble* and *Goodyear*.

Likewise, the Court declines to follow the Western District of Tennessee's decision in *Landers*. The *Landers* court acknowledged that "[c]ourts addressing remand motions in situations similar to that presented here . . . have reached inconsistent results."[41] Yet, the cases to which *Landers* refers that have denied remand are limited to *Gobble* and *Wietschner*—cases this Court declines to rely upon. The Court has reviewed the multitude of decisions cited by both parties to this dispute, which consider whether references to federal securities laws in state law complaints suffice to permit removal, and agrees with the following observation by the Delaware Court of Chancery on the split of authority:

> I recognize that there are federal decisions that have placed greater importance on references to the federal securities laws in state law complaints and permitted removal where the complaint specifically pled violations of the Exchange Act and SEC rules or cited the federal statute and regulations as a basis for the state law claims. *See, e.g., Landers v. Morgan Asset Mgmt., Inc*., 2009 WL 962689, at *7-8 (W.D.Tenn. Mar.31, 2009); *Gobble v. Hellman*, 2002 WL 34430286, at *3 (N.D.Ohio Mar.26, 2002). This appears to be the minority approach and stands in tension with the United States Supreme Court's clarification of removal jurisdiction in *Empire* and *Grable*. It also demonstrates, as the *Grable* decision recognized, that the extent to which a state law claim necessarily raises a federal issue is inherently a question of degree, requiring a

---

[40]*Fagin v. Gilmartin*, No. 03-2631, 2007 WL 419286, at *6 (D.N.J. Feb. 1, 2007).

[41]*Landers*, 2009 WL 962689, at *3.

pragmatic judgment based on the particulars of the individual case.[42]

This Court has made a particularized determination that defendants have failed to meet their burden of showing that plaintiff's well-plead Petition necessarily raises a disputed federal issue with regard to defendants' alleged breaches of duties to Sprint, and the corporate waste and unjust enrichment that flowed therefrom.

### B.     Demand

Defendants argue that plaintiff's excuse for not making demand on the Board of Directors, prior to bringing this shareholder derivative suit, is premised on violations of federal securities laws.  As defendants acknowledge in a footnote, Kansas law requires that a shareholder first demand that the Board of Directors bring a derivative action prior to bringing a shareholder derivative action.[43]  "[C]ourts are generally lenient in excusing the need for demand prior to bringing a stockholder derivative action when a petition or complaint recites circumstances that would make the demand futile or useless."[44]  Despite the fact that this requirement is wholly derived from state law, defendants argue that whether demand is excused requires the Court to determine whether the Individual Defendants violated any duties under the federal securities laws.  The Court disagrees.  As already explained, the state law claims in this Petition do not require the Court to determine whether defendants violated federal securities laws.  Likewise, a determination about whether demand is excused—a lenient standard—does not require the Court to construe federal securities laws.

---

[42]*NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 22–24 & n.1 (Del. Ch. 2009).

[43]*See Newton v. Hornblower, Inc.*, 582 P.2d 1136, 1141–42 (Kan. 1978).

[44]*Id.*

### C.      Contribution

Defendants point to plaintiff's recitation of damages in the Petition, which includes the allegation that defendants' actions resulted in the substantial costs associated with the shareholder class action lawsuit that alleges federal securities laws violations.  As a final argument in support of their claim that a substantial federal question exists, defendants assert that the Private Securities Litigation Reform Act ("PSLRA")[45] governs plaintiff's necessary claims of contribution by the Individual Defendants for violations of federal securities laws. Plaintiff does not plead contribution in the Petition.  Defendants' contribution argument relies on the following assertions: (1) plaintiff has an implicit claim for contribution that is completely preempted by the PSLRA, (2) plaintiff seeks contribution from joint tortfeasors in the Bennett Action, (3) plaintiff's recovery for losses incurred on the federal claims depends on Sprint's liability in the Bennett Action, and (4) contribution is a necessary element of plaintiff's damages claim, rather than a defense.

The Court finds defendants' contribution argument to be strained and circular. Defendants cite to no case where a court has found either complete preemption or a substantial federal question present under these circumstances.  Defendants cite to a number of cases holding that contribution in a federal Rule 10b-5 fraud case is a matter of federal law.[46]  These cases are inapplicable because plaintiff seeks to recover here on claims asserted under state law. The Court has already found that these claims do not arise under federal law.

Defendants argue that contribution is completely preempted by federal securities law, yet

---

[45]15 U.S.C. § 78u-4(f).

[46]*E.g.*, *Musick, Peeler & Garrett v. Employers Ins. of Wausau*, 508 U.S. 286, 288 (1993).

concede that the Petition itself is not preempted by federal law.[47]  Although defendants fail to

adequately explain this distinction, it appears that defendants rely on cases generally describing

complete preemption to support their contention that plaintiff must necessarily seek contribution

in this case under federal law, thus creating a substantial federal question.  The Court rejects

defendants' attempt to conflate these issues.  To the extent defendants argue that the contribution

claim, and thus, the Petition, is completely preempted by federal law, the Court disagrees.

Removal is not appropriate on the basis of a federal defense, including preemption,[48] but

complete preemption functions as an exception to the well-pleaded complaint rule.[49]  Under the

complete preemption doctrine, "federal courts may exercise federal question jurisdiction over

complaints that, although not presenting federal questions on their face, nonetheless present state

law claims that are *preempted* by federal law."[50]  Complete preemption, as opposed to ordinary

preemption, describes "the specific situation in which a federal law not only preempts a state law

to some degree but also substitutes a federal cause of action for the state cause of action, thereby

manifesting Congress's intent to permit removal."[51]  Defendants have failed to fulfill their

burden of showing that the PSLRA completely preempts plaintiff's state law causes of action in

this matter.  As already discussed, while plaintiff's claims may be implicated to some extent by

federal rules and regulations, none of plaintiff's claims turn on a federal issue.

---

[47](Doc. 34 at 22 n.18.)

[48]*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392–93 (1987); *Felix v. Lucent Techs, Inc.*, 387 F.3d 1146, 1154 (10th Cir. 2004) (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003)), *cert. denied*, 545 U.S. 1149 (2005).

[49]*Caterpillar*, 482 U.S. at 393; *Qwest Corp. v. City of Santa Fe*, 380 F.3d 1258, 1264 n.1 (10th Cir. 2004).

[50]*Garley v. Sandia Corp.*, 236 F.3d 1200, 1207 (10th Cir. 2001) (emphasis in original).

[51]*Schmeling v. NORDAM*, 97 F.3d 1336, 1342 (10th Cir. 1996).

Moreover, defendants fail to acknowledge that this case and the Bennett Action do not completely overlap. The only common defendants in the Bennett Action are Forsee, Saleh, and Arendt. At most, the PSLRA would dictate the necessary findings by the trier of fact in the Bennett Action in order to allow for joint and several liability of these three defendants only. In order for the contribution provision of the PSLRA to apply to a final judgment, the defendant must be a "covered Person," meaning "a defendant in any private action <u>arising under this chapter</u>."[52] Defendants fail to explain how these provisions apply given that the Petition recites other damages caused by the Individuals Defendants' alleged actions such as costs incurred from compensation and benefits paid to defendants who breached duties to Sprint. This Petition alleges that damages resulted from the actions of all Individual Defendants and seeks damages beyond those claimed in the Bennett Action.[53] Plaintiff's prayer for relief, which seeks damages above and beyond those associated with the Bennett Action, does not necessarily require the court to interpret or apply federal law.

In sum, neither complete preemption nor the substantial federal question doctrine permit removal in this case and the Court agrees with plaintiff that the case must be remanded to state court because federal jurisdiction does not affirmatively appear in the record.

### D.  Attorneys' Fees

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."

---

[52]15 U.S.C. § 78u-4(f)(10)(C) (emphasis added).

[53]The state court may be required to await the outcome of the Bennett Action in federal court before awarding the damages associated with the Bennett Action. *See Young v. Antioco*, No. Civ.A.3:03-CV-0333-M, 2003 WL 23201342, at *3 (N.D. Tex. Aug. 6, 2003).

*Martin v. Franklin Capital Corp.*[54] sets forth the appropriate standard for awarding fees under the statute:

> Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied. In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case. For instance, a plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees. When a court exercises its discretion in this manner, however, its reasons for departing from the general rule should be "faithful to the purposes" of awarding fees under § 1447(c).[55]

The Court is mindful of "the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied."[56]

The Court denies plaintiff's motion for an award of fees and costs. As this Court explained in determining whether the Court has removal jurisdiction, whether references to federal securities laws in state law complaints suffice to permit removal has been heavily litigated in federal district courts primarily outside of this jurisdiction. While the Court finds that the weight of this authority favors remand, there is an obvious minority of courts that have concluded that reference to violations of federal securities laws in cases similar to this one justifies removal. Given this split of authority, the Court cannot find that defendants lacked an

---

[54]546 U.S. 132 (2005).

[55]*Id.* at 141 (citations omitted).

[56]*Id.* at 140.

21

objectively reasonable basis in seeking removal.

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff Cheryl Randolph's

Motion to Remand Action and for Fees and Costs (Doc. 28) is granted in part and denied in part.

Plaintiff's motion to remand is granted and her request for fees and costs is denied.  The case

shall be remanded to Johnson County, Kansas District Court.

Dated: <u>December 13, 2010</u>

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE